IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 15, 2025

**BERNARD WOODARD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Putnam County**
**No. 2018-CR-818-A      Wesley Thomas Bray, Judge**

_____

**No. M2023-01164-CCA-R3-PC**

_____

The Petitioner, Bernard Woodard, was convicted of burglary, theft of property valued at $2500 or more, and felony evading arrest. The trial court sentenced the Petitioner, as a career offender, to an effective eighteen-year sentence in the Tennessee Department of Correction. On appeal, this court affirmed the judgments. *State v. Woodard,* No. M2020-01538-CCA-R3-CD, 2021 WL 5467384, at *1 (Tenn. Crim. App. Nov. 23, 2021), *no perm. app. filed*. The Petitioner filed a post-conviction petition alleging, among other claims, that he had received the ineffective assistance of counsel. The post-conviction court summarily dismissed the petition for failure to state a colorable claim. On appeal, this court reversed and concluded that the petition raised colorable claims and remanded the case for further proceedings. *Woodard v. State*, No. M2022-00162-CCA-R3-PC, 2022 WL 4932885, at *1 (Tenn. Crim. App. Oct. 4, 2022), *no perm. app. filed*. On remand, the post-conviction court held a hearing and later issued an order denying relief. The Petitioner appeals, maintaining that he received the ineffective assistance of counsel at trial. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

J. Liddell Kirk, Madisonville, Tennessee, for the appellant, Bernard Woodard.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Mark E. Gore Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Petitioner's involvement in a burglary and theft, followed by his evading police. In the Petitioner's direct appeal, this court summarized the case as follows:

> The [Petitioner] and two co-defendants, Mr. Adam Loper and Ms. Rebecca Flueras, entered a gas station, and the co-defendants filled two suitcases with over $3,000 worth of cigarettes from a back storeroom while the [Petitioner] spoke to the clerk about vape products. The [Petitioner] drove away from the gas station with the co-defendants in the vehicle, and he failed to stop for five miles on the interstate while pursued by law enforcement.

*Woodard*, 2021 WL 5467384, at *1.

## A. Procedural History

The Petitioner appealed his convictions, asserting: (1) that his jury was not impartial due to the racial composition of the jury venire; (2) that the State failed to establish the value of the stolen property, (3) prosecutorial misconduct, and (4) that partial consecutive sentencing was excessive. After review, this court affirmed the trial court's judgments and sentence. *Id.*

The Petitioner filed a *pro se* petition for post-conviction relief. This court summarized the Petitioner's claims as follows:

> [T]he Petitioner alleged that his trial counsel was ineffective by failing to (1) object to the underrepresentation of African Americans in the jury venire; (2) file a motion for change of venue after advising the Petitioner that he "would not get a fair trial in this county"; (3) file a motion to determine the Petitioner's competency to stand trial; (4) object to the prosecutor's comments during closing arguments regarding the Petitioner's right to remain silent; (5) file a motion to quash the indictment because no African Americans were serving on the grand jury; and (6) file a notice of appeal after the Petitioner advised trial counsel that he wanted to file an appeal. The Petitioner also alleged that his appellate counsel was ineffective by failing to prepare and file a transcript of the closing argument on direct appeal. We refer to these claims herein as the Petitioner's "Sixth Amendment claims." In addition, the Petitioner raised two stand-alone claims for relief: that his jury was drawn from a venire that underrepresented African Americans and

2

that, during the closing argument, the prosecutor impermissibly commented on the Petitioner's right to remain silent.

*Woodard*, 2022 WL 4932885, at *1. The post-conviction court summarily dismissed the petition without appointing counsel or holding an evidentiary hearing. *Id.* The post-conviction court found that the Petitioner's claims were either previously determined on direct appeal or not colorable post-conviction claims. *Id.*

On appeal, this court affirmed the post-conviction court's dismissal of claims that had been waived but remanded for appointment of counsel and a hearing on the issues related to the ineffective assistance of trial counsel and appellate counsel. *Id.* On remand, the Petitioner filed an amended petition, alleging, as relevant to this appeal, that his trial counsel ("Counsel") did not object to the trial court imposing consecutive sentencing.

## B. Post-Conviction

At the hearing, post-conviction counsel announced that the Petitioner intended to present evidence that showed that Counsel failed to address "certain jury issues," failed to have the Petitioner tested for competency, failed to provide the Petitioner with discovery "within a reasonable period of time" following the trial, and that Counsel created "unrealistic expectations" with respect to sentencing. Post-conviction counsel clarified that the Petitioner would not be pursuing any claims against appellate counsel.

Counsel testified that the jury pool for the Petitioner's case was "pretty good size" with approximately fifty to sixty potential jurors in the pool and there were no Black jurors in the jury pool. Counsel could not recall if the Petitioner mentioned this fact to him on the day of jury selection; but stated that he and the Petitioner had discussed the issue of jury diversity before jury selection. He spoke with the Petitioner about the jury make-up to help the Petitioner decide whether the Petitioner wanted to proceed to trial and "what that would look like." He discussed diversity in the context of juries with the Petitioner before the day of jury selection because he felt he would be "remiss not to address the issue of race with" the Petitioner. He noted that the upper Cumberland area did "not have a large percentage of African Americans that typically appear" on juries, and he did not want the Petitioner to be surprised by the absence of "people of color." Counsel confirmed that the lack of diversity on a jury was "a concern" for the Petitioner.

Counsel testified that he met with the Petitioner "many times" at his office and spoke with him during "numerous" phone calls. He reviewed discovery with the Petitioner, including surveillance video footage of the incident and subsequent arrest.

Counsel confirmed that he discussed with the Petitioner the State's offer of nine years to serve at forty-five percent release eligibility. Counsel stated that the offer was based upon the Petitioner's status as a career offender. Initially, Counsel did not have the "ability to confirm [the Petitioner's] career offender status." Counsel, however, went to the District Attorney's Office, met with the state prosecutor, and reviewed the Petitioner's criminal history, confirming that the Petitioner qualified as a career offender. Counsel wrote a letter to the Petitioner explaining that the Petitioner faced twelve years if convicted at trial as a career offender. He also spoke with the Petitioner about the potential sentence at the courthouse. He believed that the State's offer "was in [the Petitioner's] overwhelming best interest."

Counsel believed that there was a strong defense to the evading arrest charge. The defense theory was that the Petitioner stopped at the first exit available to him. Even if convicted of the evading arrest charge, Counsel believed he had a strong argument in support of concurrent sentencing. Counsel told the Petitioner that if he did not accept the State's nine-year offer, the Petitioner would "receive at least twelve years to serve at sixty percent" release eligibility. Counsel advised the Petitioner of the possibility that the trial court could run the evading arrest conviction consecutively to his other convictions, but he and the Petitioner felt there was a strong chance the Petitioner would be acquitted on the evading arrest charge. Counsel confirmed that he advised the Petitioner to consider the fact that consecutive sentencing was a possibility if he proceeded to trial.

Counsel testified that he did not object to any statements the prosecutor made during closing argument; however, he raised the issue of improper closing argument in the motion for new trial. In reference to these statements made during closing argument, Counsel described the statements as "very on brand for [the prosecutor] that very much touched on commenting on the sidelines." The post-conviction court interrupted, asking if post-conviction counsel had "the exact verbage[sic]," and post-conviction counsel responded, "I do not have that specific citation to it."

When asked to reflect on whether he would have done anything differently with respect to his representation of the Petitioner, Counsel responded that he would have objected to the State's closing. He explained that, at the time of trial, the appellate courts did not appear to actively intervene in improper closing argument but that several cases had come out since then that provided more parameters to closing argument. He explained that he also refrained from objections during closing argument because the interruption can "sour a jury." When asked if another attorney with his same experience would have made an objection, Counsel stated that he did not think so.

On cross-examination, Counsel agreed that his decision not to object to the State's closing argument was a tactical decision in part. He stated that an attorney must be

4

"sensitive to [the] jury's time and their attention." Counsel recalled that the prosecutor made "thinly veiled inferences," not so inflammatory as to demand an objection. He did not want to make objections that would not be sustained because it might give the jury the impression he was "wasting their time." Counsel stated that he did not think an objection to the prosecutor's statements during closing argument "would [have] move[d] the ball." Counsel stated that if he had thought an objection would be sustained and benefit his client, he would have objected.

Counsel recalled that the defense theory the Petitioner wanted Counsel to present at trial was that the Petitioner was merely giving his co-defendants a ride to Davidson County and that he was entirely unaware of their plan to steal from the gas station. As the entire incident was captured on camera, and the Petitioner appeared to wear a disguise since he wore a hat with dreadlocks throughout the incident, Counsel was concerned about the success of this defense theory. Counsel advised the Petitioner that they had a strong defense to the evading arrest charge but that he did not believe that the theft charge would sustain an acquittal. Given the Petitioner's criminal history, Counsel thought it likely the Petitioner would be sentenced as a career offender.

Counsel identified a May 28, 2019 letter that he sent to the Petitioner. This letter served as a written memorialization of Counsel's advice to the Petitioner about the case and potential sentencing. The letter ("Sentencing Memorandum") provides as follows:

> [W]e have been working on your case for many months now and it is now in a position to either enter a plea or set a trial. The State has made you a plea offer, which would require you to take a 9 year sentence to serve at a Range III release eligibility date on the theft charge and take 6 years to serve Range III on the evading arrest charge and the Evading would run concurrently for an effective 9 years to serve at 45%; meaning you would have to serve 4.05 years before you are eligible for parole. Alternatively, you could take 10 years to serve and allow the judge to sentence you and the Judge would be able to sentence to probation if he wishes. The reason the plea offer is so harsh is because you . . . have lengthy criminal history. . . . [Y]ou are, because of your prior felony convictions, a career offender. This means whatever sentence you receive is ranged up and you serve a larger portion.
>
> [Y]ou are charged with Burglary, a Class D felony which, as a Career offender, carries a punishment of 12 years to serve at 60%. You are also charged with Theft in an amount over $2,500.00 which is also a Class D Felony which as a Career offender, carries a punishment of 12 years to serve at 60%; and finally you are charged with Evading Arrest a Class E felony,

5

which, as a Career offender, carries a punishment of 6 years at 60%. Therefore, the total effective sentence you face is 12 years at 60% release eligibility.

Further, as I have explained to you, there is video evidence showing you, wearing a disguise, going into the Pilot with your two passengers while they steal cigarettes. I understand your position is you did not know what they would do but the evidence against you is substantial enough that I believe the state can argue you acted as a lookout and I believe the jury could believe that fact. If the jury believes you are a lookout, it is likely you will be convicted and serve 12 years at 60%. Therefore, I suggest you consider accepting the plea. If you do not accept the plea, we will proceed to trial and you understand that I believe there is a likely chance you will be convicted as charged and sentenced to 12 years to serve.

The Petitioner signed the Sentencing Memorandum as an indication of his decision to proceed to trial despite Counsel's legal advice that the Petitioner consider accepting the State's offer to plead guilty. When questioned about the final line of the Sentencing Memorandum that advises that the Petitioner's potential sentence was twelve years, Counsel responded that, prior to the Sentencing Memorandum, he discussed the possibility of consecutive sentencing with the Petitioner. Counsel said, "I explained to [the Petitioner] the twenty-four-hour merger rule. I explained to him his liability as a career offender. [The 12 years] represented what I thought the floor was."

Counsel testified that there was no basis to raise a *Batson* challenge. Counsel said that he believed he had a strong argument for a motion for judgment of acquittal, and he wanted the trial court to be receptive to that motion. In his experience, he found that frivolous arguments and motions "that have no merit, sometimes . . . can take away some credibility on the ones that do have really good merit." Counsel believed that his argument for judgment of acquittal which related to how the value of the theft was determined, was the Petitioner's "best chance."

The Petitioner testified that there should have been "a certain amount of" Black people on his jury but he did not know how many. The Petitioner stated that he did not have any statistical information on the racial makeup of Putnam County. The Petitioner agreed that Counsel raised the prosecutor's improper statement in his motion for new trial but maintained that Counsel should have objected to the prosecutor's statements that "implied [that the Petitioner] didn't take the stand and [he] remained silent."

About the Petitioner's sentence, he explained that he proceeded to trial because, "if you tell me you trying to give me nine years at forty five percent, if I got to trial I get twelve

6

years, I'm going to take my chances at trial. That's what the sentencing memorandum said." The Petitioner said that Counsel never explained the State's nine-year offer to the Petitioner.

The Petitioner testified that he never received any discovery from Counsel before or after the trial. He denied that Counsel viewed the surveillance video footage with him. He stated that the only time that he went to Counsel's office was to make payments.

On cross-examination, when asked about the prosecutor's alleged improper statements, the Petitioner could not identify specific statements but maintained that the prosecutor "had no right to say nothing about me" because the Petitioner had the right to remain silent.

The Petitioner testified that Counsel should have objected when the trial court imposed an effective eighteen-year sentence. The Petitioner stated that had he known about the possibility of an eighteen-year sentence, he would have accepted the State's offer to plead guilty.

The State recalled Counsel, who testified that his records reflected that he met with the Petitioner at 2:00 p.m. on March 19, 2019, and that he reviewed the videos and discussed the case during that meeting.

After hearing this evidence, the post-conviction court found that the Petitioner had failed to establish that Counsel was deficient and failed to show the Petitioner was prejudiced by Counsel's representation. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner asserts that the post-conviction court erred when it denied post-conviction relief. The Petitioner argues that Counsel's Sentencing Memorandum was misleading because it indicated his effective sentence would be twelve years if he proceeded to trial, and the trial court imposed an eighteen-year sentence. The State responds that the post-conviction court properly denied relief. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value

7

to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the

8

"distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In his brief, the Petitioner argues that Counsel was deficient by incorrectly advising the Petitioner that his potential sentence was twelve years without consideration of possible consecutive sentencing. The State responds that the Petitioner has waived this issue for failure to raise it in his petition.

The Petitioner alleges in his amended petition that Counsel should have objected to consecutive sentencing in light of his advice to the Petitioner in a Sentencing Memorandum that his sentence would be twelve years. Although that specific approach to this issue has shifted on appeal, the basis of the argument on appeal is that Counsel rendered advice in the Sentencing Memorandum that was inconsistent with the outcome at sentencing. The Petitioner claims that he relied on this advice to his detriment. The record is sufficiently developed with respect to this issue; thus, we will review the Petitioner's claim that Counsel was deficient.

In its order denying relief, the post-conviction court found Counsel's testimony credible and found that the Petitioner's testimony at the hearing "lacked credibility." The post-conviction court then found:

> Regarding the claim pertaining to the Sentencing memorandum from [Counsel] and consecutive sentencing, the Court found that the Petitioner failed to present any proof that trial counsel was deficient in any way. Contrary to the Petitioner's assertions, the Court found that trial counsel's performance was not deficient regarding his discussions and counseling the petitioner about accepting or rejecting the State's plea offer. Additionally, the Court found that trial counsel met with the Petitioner on numerous occasions and discussed the benefits of accepting State's plea offer and the likely sentence that the Petitioner would receive if he declined the State's offer. Again, the Court found that trial counsel was not deficient in his performance regarding this claim.

The evidence does not preponderate against the post-conviction court's findings. Counsel testified that he discussed the potential sentence with the Petitioner, explaining the potential for consecutive sentencing. The Petitioner signed a document explaining sentencing and Counsel's recommendation that the Petitioner accept the State's nine-year offer. Although Counsel did not mention consecutive sentencing in the Sentencing Memorandum, Counsel testified that he "[a]bsolutely" explained consecutive sentencing to the Petitioner. He stated that the reference to a twelve-year sentence was a "floor" and that he discussed with the Petitioner the possibility of consecutive sentencing. The Petitioner testified both that Counsel did not discuss the State's offer with him and that, after considering the State's offer of nine years against the potential of twelve years at trial, he preferred to "take [his] chances at trial."

Accordingly, the Petitioner failed to prove, by clear and convincing evidence, that Counsel's advice was deficient or that he was prejudiced by Counsel's representation. The Petitioner is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning, the judgment of the post-conviction court is affirmed.

_____s/ *Robert W. Wedemeyer*_____
ROBERT W. WEDEMEYER, JUDGE